UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Sandra Cyr, et al.,<br>    *Plaintiffs*,<br><br>    *v.*<br><br>E.I. DuPont De Nemours & Co., DuPont Pension and Retirement Plan,<br>    *Defendant.* | Civil No. 3:09cv578 (JBA)<br><br><br><br>May 28, 2010 |

RULING ON MOTION TO DISMISS

Defendants EI Du Pont De Nemours & Co. ("DuPont") and DuPont Pension and Retirement Plan (the "Plan") move to dismiss both counts of the Amended Class Complaint filed by Plaintiffs Sandra Cyr and John Quarles, who have alleged violations of ERISA, 29 U.S.C. §§ 1109, 1132(a)(1)(B), and 1132(c) seeking both welfare and pension benefits. For the following reasons, Defendants' Motion to Dismiss will be granted.

I.      Factual Background

Plaintiffs allege the following facts. Cyr and Quarles were employees of the Remington Arms Company ("Remington Arms") in Bridgeport, Connecticut, which became a wholly owned subsidiary of DuPont in 1980.[1] In 1984, the Remington Arms pension plan merged into DuPont's Pension Plan (the "Plan").

During the course of their employment with DuPont, Cyr and Quarles received individualized annual benefits statements outlining the benefits to which they would each be

---

[1] They bring this action along with a putative class of plaintiffs consisting of at least 100 employees permanently laid off from Remington Arms between 1987 and 1991, claiming that as of December 31, 1991, no laid off "employees had any indication that they would receive anything other than the benefits set forth in [annual] written statements." (Am. Compl. [Doc. # 18] at ¶ 26.)

entitled upon retirement, dependent on each one's age and service-time for DuPont.  They also received the DuPont Summary Plan Description ("SPD"), which outlines the Plan's terms in condensed form.  The SPD provides that when an employee leaves DuPont after vesting in the Pension and Retirement Plan (ten years completed service) but before being eligible to retire as a pensioner, she is entitled to a deferred vested pension.  (*See* SPD, Ex. A to Defs.' Mot. Dismiss [Doc. # 19] at 19.)  The SPD also allows employees to retire upon involuntary termination if they are over 45 years old and have at least 25 years of service.  The SPD explains that the full Plan, the E.I. Du Pont de Nemours and Company Pension and Retirement Plan and the Trust Agreement between DuPont and the plan trustee "are the governing documents in the event questions arise."  (*Id.* at 26.)

Cyr worked for Remington Arms for over twenty years until terminated on October 31, 1989 at age 43.  Cyr alleges that after fifteen years of employment for Remington Arms, she became fully vested in the Plan.  She further alleges that she was promised in the annual benefits notice $952.00 per month in pension benefits as well as health benefits, a savings and investment plan holding $9,934.37 in investments, a fixed income fund holding $1,400.15, and company–provided health insurance. She alleges that "she is now being offered approximately one half of what she had previously been offered in writing in terms of the actual pension benefit and she is not being offered any of the supplemental benefits she had previously been offered in writing."  (Am. Compl. [Doc. # 18] at ¶ 20.)

Quarles worked for Remington Arms for 24 years until he was terminated on September 25, 1987 at age 44.  He also alleges that after fifteen years of employment for Remington Arms, he became fully vested in the Plan, and prior to that, he was given annual benefits statements promising a certain level of pension benefits, health benefits, a savings and

investment plan, a fixed income fund, and life insurance. He is now offered half of what he had been previously offered in writing in terms of actual pension benefits and none of the other supplemental benefits he was promised.

Between April and October 2008, Cyr alleges she exhausted her administrative remedies under the Plan by sending three letters to the Plan and to DuPont's in-house counsel, Mary Jo Anderson, requesting review of "Plaintiff's issues related to the reduced benefits" and outlining her claims and alleged violations of ERISA. (*Id.* at ¶ 23.) Plaintiffs now bring suit against DuPont and the Plan under ERISA for failure to offer previously promised plan benefits (Count One) and failure to follow the terms of the Plan by "failing to adhere to the promises set forth" in the annual Remington Arms Pension Statements (Count Two). (*Id.* at ¶ 27.)

II.     Discussion

Plaintiffs seek declaratory judgment that Defendants' failure to provide them with the previously promised benefits was in violation of ERISA; a judgment awarding monetary compensation for any and all losses they have suffered as a result of ERISA violations; fees and costs; and a judgment awarding any other relief that is just and proper. Both of Plaintiffs' counts allege violations of Section 1132(a)(1)(B) (benefit recovery under a plan) and Section

1109 (breach of fiduciary duty).[2] Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

    A.    29 U.S.C. § 1132(a)(1)(B)

        *1.    Proper Defendants*

Defendants argue that Plaintiffs have failed to name the proper defendants for an action under Section 1132(a)(1)(B) to claim any supplemental, non-pension benefits and thus, their claims must be dismissed. "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (internal quotations omitted). While it is undisputed that the named Defendants are the administrators of the DuPont Pension and Retirement Plan, the Amended Complaint makes no claim that Defendants were administrators or trustees of *supplemental* benefit plans, and Plaintiffs' counsel conceded at oral argument that neither Defendant was such an administrator or trustee. Accordingly, Plaintiffs' claim under Section 1132(a)(1)(B) to recover non-pension benefits against the named Defendants fails.

        *2.    Entitlement to Pension Benefits Sought*

At further issue is whether Plaintiffs' claim that they were promised pension benefits that they claim they were later denied states a viable ERISA claim. Defendants argue that Plaintiffs cannot establish entitlement to pension benefits based on communications contained in the annual benefits statement because the SPD (and the full texts it summarizes) controls

---

[2] Plaintiffs also alleged violations of Section 1132(c), governing plan administrators' refusal to supply requested information. Acknowledging that Plaintiffs have not alleged that Defendants refused to provide any information on the Plan, Plaintiff's counsel voluntarily dismissed the Section 1132(c) claims during oral argument.

benefit entitlements, and it makes no representation that full pension benefits are available to beneficiaries who, at the time they were involuntarily terminated, did not meet the age and service thresholds for full pension benefits.

"Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988).[3] Although *Moore* addressed an ERISA welfare plan, and not a pension plan, its holding has been extended to pension plans. *See Capozzi v. Gale Group, Inc.*, 80 F. App'x 151 (2d Cir. 2003) (extending the *Moore* analysis to an ERISA pension plan). The Sixth Circuit in *Crosby v. Rohm & Haas Company* has also held that for both welfare and pension benefits, "[t]he plan administrator may amend a plan only through formal procedures specified in the plan documents, . . . not through informal communications," and a worksheet that summarizes an individual employee's benefits and is not circulated to anyone else and does not "purport to summarize any material modifications to the plan" is "nothing more than an informal communication between the administrator and one employee" that "could not amend the terms of the plan." 480 F.3d 423, 428–29 (6th Cir. 2007).

Here, the annual benefits statements upon which Cyr and Quarles rely as the basis for their ERISA benefits claim, which summarize individual employee benefits, functionally

---

[3] The rationale underlying this intention, explained by the Second Circuit in *Moore v. Metropolitan Life Insurance Company*—in the context of a welfare plan covered by ERISA—is that "[w]ere all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created." *Id.* Thus, "absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries." *Id.*

resemble the worksheets held in *Crosby* to be unenforceable informal communications.[4] They were "type written notices [received] on an annual basis which laid out the individualized benefits that each employee would receive upon electing benefits at a certain age." (Am. Compl. at ¶ 25.) There is no claim that they purported to summarize material modifications to the Plan. In fact, Cyr's annual benefits statement contains the disclaimer from the Plan that "[w]e believe it is accurate; however in the event of a mistake, your actual benefits would be based on the terms and conditions set forth in the text of the plans." (Annual Benefits Stmt. at 1.) Thus, the annual benefits statements can constitute nothing more than informal communications, and by their terms, if their substance differs from the SPD, the SPD governs.

The SPD only allows for employees who are 45 years old or older at the time of involuntary termination to elect to receive pension benefits (SPD at 6 ("If you are terminated involuntarily *for lack of work*, you may be eligible for an optional pension as early as age 45, if you have at least 25 years of service." (emphasis in original))), and neither Cyr nor Quarles reached the age of 45 before their involuntary terminations (Am. Compl. at ¶¶ 20, 21). Defendants concede that Cyr and Quarles may be entitled to deferred vested pensions, having

---

[4] The Court will rely on both Cyr's annual benefits statement (Ex. B to Defs.' Mot. Dismiss [Doc. # 19]) and the SPD. Although they which are not a part of Plaintiff's Amended Complaint, a district court has discretion to consider documents outside of pleadings on a motion to dismiss under Rule 12(b)(6) when "there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992). *See also Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (district court properly relied upon SPD in suit brought under 29 U.S.C. § 1132(a) in considering motion to dismiss, because the complaint referred explicitly to the SPD and other relevant documents, and those documents were central to the plaintiffs' case). Plaintiffs' Amended Complaint refers repeatedly to the Plan and to Cyr's annual benefits statement, and both documents are central to their claim.

met the ten-year service criterion, but Plaintiffs claim entitlement to the full pension benefits that they would have earned had they retired after meeting the Plan's age and tenure thresholds. They point to nothing in the terms of the SPD to establish this entitlement. In fact, they claim that these annual notices "laid out the individualized benefits that each employee would receive upon electing benefits at a certain age, that age being either 58, 62, or 65 with benefits based on those ages." (*Id.* at ¶ 25.) Because they were both involuntarily terminated before they reached the age at which they could have received pension benefits apart from their deferred vested pension, they have no claim for full pension benefits identified in the prospective annual statements they received.

Not only does the SPD provide no basis for Plaintiffs' arguments that they are entitled to full pension benefits, the annual benefits statement on which Cyr relies in the Amended Class Complaint informed her that she "may retire . . . and receive estimated social security and unreduced monthly pension benefits," of $952 only if she retired at or after age 62. (Annual Benefits Stmt. at 5.) Because Cyr was terminated at age 43, the annual benefits statement comported with and did not contradict the SPD in any way.

Because the SPD governs and does not provide for full pension benefits for beneficiaries involuntary terminated when younger than 45 years old, and because the annual benefits statements upon which Cyr and Quarles rely make no benefits promises that are not contingent on age and tenure thresholds that were not met, Plaintiffs have failed to set forth a claim upon which relief may be granted under Section 1132(a)(1)(B), and Defendants' motion to dismiss will be granted as to this claim.

B.   Breach of fiduciary duty

Plaintiffs also allege that Defendants violated 29 U.S.C. § 1109, which provides

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Specifically, Plaintiffs allege that Defendants breached their duties as fiduciaries when they (1) "substantially changed the benefits being offered to the Plaintiffs by drastically reducing those benefits" and (2) "fail[ed] to inform the Plaintiffs as to any changes to the Remington Arms, Inc. benefits statement provided in the late 80s and early 90s." (Pl.'s Mem. Opp'n Mot. Dismiss [Doc. # 21] at 11.)  Defendants argue that Plaintiffs' breach of fiduciary duty claim must be dismissed because Plaintiffs seek individual relief only, not on behalf of the Plan.

"Under sections [1132](a)(2) and [1109](a), plan participants may unquestionably bring actions against fiduciaries for breaches of fiduciary duty." *Coan v. Kaufman*, 457 F.3d 250, 257 (2d Cir. 2006).  However, such claims "may not be made for individual relief, but instead are 'brought in a representative capacity on behalf of the plan.'"  *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).  Since Section 1109, by its terms, holds a fiduciary of a plan liable "to make good to such plan any losses to the plan resulting from each such breach" of that fiduciary's duties, and is silent to any individual relief beyond that inuring to the Plan and thus its beneficiaries and participants, claims under Section 1109 can be brought only in a representative capacity on behalf of a plan.  Plaintiffs' counsel conceded at oral argument that Plaintiffs, even though proceeding as a class action, are not bringing this action on behalf of the Plan; they seek individualized monetary relief

8

only.  (Oral Arg. Tr. 35:24–36:5 (Plaintiffs' counsel: "[T]he complaint is drafted in the way as to request individual relief on behalf of the 100 or so [putative] class members.  So, I don't believe the complaint anywhere states specifically that it's asking for relief on behalf of the Plan itself.").)  Therefore, Defendants' Motion to Dismiss will be granted as to Plaintiffs' claims under Section 1109(a).

III.   Conclusion

Accordingly, Defendants' Motion to Dismiss [Doc. # 19] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of May, 2010.